COMMONWEALTH *vs.* JAMES M. O'BRIEN.

Suffolk.     February 5, 1940. — March 12, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Municipal Corporations,* Officers and agents.     *Words,* "Fraudulently."

Evidence of conduct of the treasurer of a city and of his secretary and his attorney with respect to an admitted shortage in cash existing when his successor took office, was not sufficient to warrant a conviction of an intentional and fraudulent conversion under G. L. (Ter. Ed.) c. 266, § 51.

INDICTMENT, found and returned on May 27, 1938.

The indictment was tried before *Goldberg,* J.

*J. P. Brennan,* for the defendant.

*E. O. Proctor,* Assistant Attorney General, for the Commonwealth.

Cox, J.     The defendant was found guilty by a jury upon one count of an indictment which alleged that "James M. O'Brien on the sixth day of January in the year of our Lord one thousand nine hundred and thirty-five, being an officer of a city, to wit: the treasurer of the city of Revere, a municipal corporation legally established and existing, and being duly and legally elected and qualified to perform the duties of such officer, did embezzle and fraudulently convert and did fraudulently take and secrete with intent to embezzle and fraudulently convert, money of the amount and of the value in all of" $13,277.04, "of the property of the said city of Revere." At the close of the Commonwealth's evidence the defendant rested and presented a motion for a directed verdict of not guilty, which was denied subject to his exception.

The record contains three bills of exceptions in which numerous exceptions are set out. In the view, however, that we take of the case, it is unnecessary to consider any exceptions other than those to the denial of the defendant's motion, and to the overruling of a "Plea in Abatement" that is alleged to have been regarded and treated by the trial judge as a motion to dismiss. This motion related to an alleged irregularity in the summoning of the grand jury, by whom, we assume, the indictment in question was returned. From the record it appears that on May 27, 1938, the defendant pleaded not guilty to the indictment. It was not until October 7, 1938, that he filed the so called plea in abatement. The general plea of not guilty in the circumstances was, in the main, a waiver of all defects touching the indictment and it was then too late to attack its validity. *Commonwealth* v. *Lombardo,* 271 Mass. 41, 44. *Commonwealth* v. *Ventura,* 294 Mass. 113, 120, and cases cited. The fact that the bill of exceptions alleges that the "Plea in Abatement" or motion was filed before the defendant pleaded to the indictment is not controlling in face of the record which shows that this is not the fact. *Commonwealth* v. *McGrath,* 115 Mass. 150. See *Cohen* v. *Price,* 273 Mass. 303, 306.

It was not disputed that the defendant from 1927 to January 8, 1935, was the duly elected and qualified treasurer of Revere serving in that capacity. He appears to have vacated the office upon his election as mayor of the city. There was evidence that in the treasurer's general office there was a cage and a vault; that the vault was three feet two inches in width, and that its top shelf was nine feet eight inches from the floor. On January 8, 1935, when the treasurer who succeeded the defendant assumed his office, a State accountant turned over to him in cash and checks about $95,000. The defendant was not present, and the treasurer, at the request of the accountant, gave to one Farrell a receipt made out to the defendant for the amount of money received. Farrell, up to that time, had been an employee in that office. The new treasurer had already made arrangements with the defendant for Farrell

to remain in the office in order to acquaint him with his duties. She remained there until May 4, 1935, and did routine work up to the middle of March when she went to work in another department in the city hall. After the middle of March, while the accountants were there, as hereinafter appears, she was back and forth in the treasurer's office, doing certain work. On March 9, 1935, accountants from the Commonwealth's division of accounts came to the office to audit the books and found that as of that date there was a shortage of $13,277.04. By taking the balance of cash on hand on January 8, as a basis, this shortage was found to have been in existence on January 8, except for a difference of $10. It does not appear how long the accountants were at work in the office, but from March 9 to May 4, Farrell was there assisting them, and during that time she had keys to the office and to the inside door of the vault, which she returned to the treasurer on May 20.

On the morning of May 18, when one of the clerks, who was a witness, came to the office, she found Farrell and another employee there. When the other employee left, Farrell went into the vault, where she remained ten or twelve minutes, and then came out with a tin box in her hand which she had taken from the top shelf. She had a key. In the presence of the other clerk she opened the box, counted the money that was in it, and gave $12,401.51 as the amount. This money was done up in "packages," and Farrell counted it by packages and not bill by bill. The box was then closed, locked and placed in the vault by her. On May 20, the defendant asked the accountants to come to Revere. When they arrived, he told them that some money had been found over the weekend; that "he 'understood it was in a canvas bag they deliver money from the bank.' That his secretary, Miss Farrell, had located the money; that it was in the treasurer's office." The accountants went to the treasurer's office and Farrell brought out a box from the vault and unlocked it with a key that she took from her handbag. The money in the box amounted to $12,401.51. Included in the packages of money were new bills amounting to $1,900 which were not

released from the bank of issue until April 10, 1935. The defendant was not present when Farrell turned over the money that was contained in the box. The treasurer gave the following receipt: "Received from Josephine Farrell, cash in box, as of March 9, 1935, City of Revere, $12,401.51." It was not until October 10, 1935, that the report of the accountants was filed, checked and submitted to the defendant.

When the new treasurer took office, there were a "couple" of tin boxes there. Two cash boxes were identified at the trial, one of which had been used by the defendant when he was treasurer, and the other by one of the clerks. This clerk testified that she did not see the "box" from the time the new treasurer took office until it was found on May 18. Farrell had occasion to go to the vault four or five times a day from January 1 to May 18. The only other evidence bearing upon the whereabouts of the box in question was from one of the clerks who testified that she never saw anyone bring it in or take it out of the office. During the time that the defendant was treasurer, people other than the clerks came within the enclosure of the cage; the defendant and two of the clerks made the bank deposits; when the defendant was absent from the office, the clerks would receive whatever money came in and Farrell would make entries in the various books. During the defendant's absence, checks and cash were paid out and the payrolls were paid in cash. The "deposits of money were routine and the treasurer did not attend to the actual deposits. . . . [He] left blank checks with his signature and . . . [the clerks] usually filled in these checks and would make payments on warrants or any other things." No false entries were found in any of the books.

In July, 1936, an attorney, acting for the defendant, turned over to the treasurer $3,233.96. This amount appears to represent the difference between the shortage apparently existing before the cash in the box was found, and the amount found therein, together with two items, one of $2,000.63, and the other of $357.76, that had to do with certain tax titles. These items were the basis of two

other counts in the indictment upon which the defendant was found not guilty. The balance of $875.53 represented the amounts of checks received by the defendant when he was treasurer that could have been found to have been worthless. There was evidence that the defendant was not in the treasurer's office at the time the cash was counted on January 8, or at any time thereafter until some time in September of 1935.

G. L. (Ter. Ed.) c. 266, § 51, so far as material, provides: "A . . . city . . . officer who embezzles or fraudulently converts, or who fraudulently takes or secretes with intent so to do, effects or property which belong to or are in possession of said . . . city . . . shall be punished . . . ." The burden was upon the Commonwealth to establish beyond a reasonable doubt that the defendant, as treasurer of the city of Revere, fraudulently converted, or fraudulently took or secreted with intent to fraudulently convert, the city's money. It is not contended that he was not the treasurer, or that there was not a shortage of money for which he was properly accountable. The treasurer of a city is an independent accounting officer, by statute made the depositary of its moneys, and the legal possession of the specific moneys in his hands, from whatever source, is in him. He holds all moneys of the city as its property and exclusively for its use. *Mansfield* v. *Hanaford*, 250 Mass. 559, 561, and cases cited.

A fraudulent intent is made a constituent and an essential part of the offence charged. Without this intent there may be misconduct, but there will be no criminality, and the question whether there has been a conversion, accompanied by a fraudulent intent, is a question of fact to be passed upon by the jury if there is any evidence in the case that warrants the submission of that question to it. The word "fraudulently" in the statute, as generally understood, well defines the character of the conversion or taking to be proved, that is, there must be some deceit, concealment or breach of trust. *Commonwealth* v. *Hays*, 14 Gray, 62, 64. See *Commonwealth* v. *Dow*, 217 Mass. 473, 476. "And a fraud may be defined to be any artifice whereby

he who practises it gains, or attempts to gain, some undue advantage to himself, or to work some wrong or do some injury to another, by means of a representation which he knows to be false, or of an act which he knows to be against right or in violation of some positive duty." *Commonwealth v. Tuckerman*, 10 Gray, 173, 203. The defendant was obligated to account for and turn over to his successor in office the moneys of the city for which he was properly accountable. But proof of a neglect to account for such money, or proof of a bare taking and conversion of it, in and of itself, would not constitute the offence for which the defendant was indicted, or, alone and unattended by any other circumstances, would not be sufficient to warrant a conviction. The failure to account might be the result of accident, forgetfulness or carelessness, or under a claim of right, made in good faith however groundless. The fact that the money was not accounted for or even that it had been converted by the defendant would only be evidence which the jury might consider, in connection with all the facts and circumstances proved, as bearing upon the question of fraudulent intent. In short, if there is to be a verdict of guilty rightfully, the jury must be satisfied upon all the evidence, not only that there was a conversion but that it was with a fraudulent intent.

In *Robinson* v. *State*, 109 Ga. 564, Robinson, a tax collector, was indicted for the embezzlement of tax money. His conviction was reversed. The section of the penal code under which he was indicted made it a criminal offence for any public officer to embezzle, steal, secrete or fraudulently take and carry away any money and other property of his department. The question whether a mere neglect of the defendant to pay over money that had come into his hands was sufficient evidence to make out the fact of a guilty misappropriation was considered. The authorities were reviewed, and the conclusion reached, with which we agree, that the mere neglect or refusal to pay over funds in the hands of a public officer, such as the defendant in the case at bar, is not sufficient to sustain a conviction for a misappropriation of the funds, in the absence of a statute

making such failure or refusal sufficient evidence of the fact. In that case it is pointed out that the proof of a fraudulent conversion can rarely be shown directly, and that the facts necessary to show it usually depend upon inferences. The court said, at pages 568 and 569: "Such neglect or refusal [to pay over funds] affords sufficient grounds for a civil action to recover the money; but when, in addition, there is proof that the officer falsified his accounts, that he was guilty of evasions in explaining his default, that he fled, or other acts indicating guilt, a case is sufficiently made to put the defendant on explanation, and if not satisfactorily explained, a conviction may be upheld. But without some similar evidence, neither the misappropriation nor the guilty intent is sufficiently shown."

In *Commonwealth* v. *Tuckerman,* 10 Gray, 173, already referred to, the defendant, who was the treasurer of a railroad corporation, was indicted under a statute that provided, among other things, that if an officer of an incorporated company should embezzle or fraudulently convert to his own use, or should take or secrete with an intent to embezzle or convert to his own use, without consent of his employer, any money of another which should have come into his possession, or should be under his care, by virtue of his employment, he should be deemed by so doing to have committed the crime of simple larceny. With respect to the defendant's contention that there could be no embezzlement unless there had been a demand of the money alleged to have been embezzled, or a denial of its receipt, or some false account given of it, or a false statement or false entry concerning it, or a refusal to account for it, it was said, at page 208: "If the doctrine so stated be fairly indicated . . . it is clear that they [prayers for instructions] were properly overruled, because it is apparent . . . that the several circumstances above mentioned do not in fact constitute any part or element of the offence. They are facts and circumstances admissible in evidence as bearing upon the question of a fraudulent intent; but for all other purposes they are wholly immaterial."

In *Commonwealth* v. *Annis,* 15 Gray, 197, a case of break-

ing and entering with intent to steal, it was held that the jury were rightly instructed that if they could not reconcile all the facts proved upon any other theory than the guilt of the prisoner, they must find him guilty; but if they could reconcile them with his innocence, they must acquit him. In *Smith* v. *First National Bank in Westfield,* 99 Mass. 605, it was said, at page 612: "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong." It is true that in order to convict on circumstantial evidence it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime, and that it is enough if it is proved beyond a reasonable doubt that the defendant committed it. *Commonwealth* v. *Leach,* 156 Mass. 99, 101–102. As was said by Rugg, C. J., in *Commonwealth* v. *Russ,* 232 Mass. 58, at pages 68 and 69: "The true rule of law respecting the probative character of circumstantial evidence is well settled. It is that the circumstances must be such as to produce a moral certainty of guilt, and to exclude any other reasonable hypothesis; 'that the circumstances taken together should be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty, that the accused, and no one else, committed the offence charged.' *Commonwealth* v. *Webster,* 5 Cush. 295, 319. *Commonwealth* v. *Goodwin,* 14 Gray, 55. *Commonwealth* v. *Annis,* 15 Gray, 197, 201. *Commonwealth* v. *Tucker,* 189 Mass. 457, 486. Guided by this rule, it cannot be said in the case at bar that the facts proved might not reasonably be found by a jury irreconcilable with the innocence of the defendant or not thought conformable to any other theory than his guilt." In *Commonwealth* v. *Alba,* 271 Mass. 333, it was said at page 337: "The jury may find a crime proved beyond a reasonable doubt even though the inferences from the facts established are not unescapable or necessary; 'it is enough if they are not too remote according to the usual

course of events, and if all the circumstances including inferences are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of incendiarism beyond a reasonable doubt.' *Commonwealth* v. *Cooper*, 264 Mass. 368, 373. 'When a material fact is not proved by direct testimony, but is left to be inferred from the facts directly sworn to, the inference need not be a necessary one. There is a case for the jury, unless the inference either is forbidden by some special rule of law, or is declared unwarranted because too remote, according to the ordinary course of events. If there is a case for the jury, they are at liberty to use their general knowledge in determining what inferences are established beyond a reasonable doubt; and the facts inferred by them are as properly proved as if directly testified to.' *Commonwealth* v. *Doherty*, 137 Mass. 245, 247." It is not for this court to consider any question of the weight of the evidence, but the only question before us is whether the jury could properly find the defendant guilty. *Commonwealth* v. *Cooper*, 264 Mass. 368, 373. But if, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise and has no solid foundation in established facts, a verdict of guilty cannot stand. *Gillis* v. *Boston, Revere Beach & Lynn Railroad*, 266 Mass. 481.

When the evidence in the case at bar is considered in the light of these governing principles of law, we are of opinion that the defendant's motion for a directed verdict should have been granted. There is no direct evidence of any fraudulent conversion or taking of money. Persons other than the defendant had access to the vault, and the Commonwealth's evidence fails to exclude the possibilities of its loss in other ways than by a fraudulent conversion by the defendant. There is no evidence of any falsified accounts. There is nothing to show any evasion on the part of the defendant in explaining his shortage, in fact, there is no evidence that anyone ever talked with him concerning the shortage until he sent for the accountants on May 20, as already narrated. There is no evidence that he fled or that he ever made any representations whatever in regard

to the affairs of his office except on May 20, or that he ever refused to account for the shortage. That there was a shortage is conceded, and the jury could have found that the money that was allegedly found in the tin box could not have been in the vault on January 8, when the new treasurer assumed office, and that it was replaced by some one for the purpose of creating the impression not only that it was in the vault on that date, but also that it had not been discovered until May 18. There is no evidence that the defendant himself replaced any money in the vault. Apart from the shortage, the only connection between the replacement of the money and the defendant is that the jury could have found that it was returned by his secretary, and that two days later he informed the accountants that it had been found. But the fact that it had allegedly been found was already known to the clerk who saw Farrell enter the vault and come out with the box in which it was contained. There was no evidence of the source of the defendant's information. It does not appear that the money was not in a canvas bag, nor does it appear that the defendant was asked or that he told how he knew that "some money had been found." All the evidence considered material to the issue is contained in the bill of exceptions and appears in the order in which it was presented at the trial. Farrell was not a witness, and there is nothing in the evidence beyond what has been stated to disclose the source of the money that was contained in the box. In our opinion the inference is not warranted from the fact that Farrell was the defendant's secretary, and from the fact of his conversation on May 20, that he was a party to the return of the money. Nor do we think that any inference unfavorable to the defendant is to be drawn from the fact of the payment by his attorney in July, 1936, of the sums hereinbefore mentioned. It is true that a financial benefit would result to the defendant from the return of the money allegedly found in the vault, but in our opinion that fact, the bare fact of the shortage, the other facts that the jury could find, and the permissible inferences, as distinguished from surmise and conjecture, that could be drawn from all

the facts, did not justify the conclusion that the defendant was guilty of the offence charged in the indictment. Upon this record we are of opinion that it was error to deny the defendant's motion for a directed verdict.

*Exceptions sustained.*